# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **CIT BANK, N.A.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:15-CV-0091-VEH |
| | ) |
| **LAVERT ANDREWS as** | ) |
| **PERSONAL REPRESENTATIVE** | ) |
| **OF THE ESTATE OF CAROL J.** | ) |
| **POE, JOSEPH KING III, and** | ) |
| **PAMELA BASS,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This action is a collateral attack on a judgment, entered in the Circuit Court of Jefferson County, Alabama, that purported to void certain mortgages—including one held by Plaintiff CIT Bank, N.A. ("CIT"), formerly known as OneWest Bank, N.A., ("OneWest"). Now pending before the court is CIT's motion for partial summary judgment on its action for declaratory judgment and claim for ejectment against Defendants Joseph King, III ("King"), Lavert Andrews, as personal representative of the Estate of Carol J. Poe ("Poe"), and Pamela Bass ("Bass"). The motion is now ripe for decision, and the motion for partial summary judgment will be **GRANTED**.

**I**

The court's uniform initial order provides the requirements for summary judgment briefs, including the manner of stating facts. (*See* doc. 2 at 16–19). Relevant here, the moving party is required to set out in separately numbered paragraphs the allegedly undisputed facts in the case. The non-moving party is then required to state whether it disputes the moving party's facts. The non-moving party may then set out its statement of allegedly undisputed facts. Finally, in the moving party's reply brief, it should describe its disputes with the non-moving party's statement of facts. The failure to respond to a fact set out in a party's statement of facts results in that fact being deemed admitted.

CIT, the moving party, alleged the following facts in its motion for summary judgment, doc. 33. Because Defendants ignored CIT's facts in their response brief, doc. 34, CIT's facts are deemed admitted:

    **A.**    **The Property, Forged Deeds, and Mortgage:**

    1.    On June 2, 2005, Joseph King III ("King") and Carol J. Poe ("Poe") acquired the real estate located at 2004 26th Street, Birmingham, Alabama (the "Property") as joint tenants with right of survivorship. The legal description of the Property is as follows:

        Lot 12 and a strip of land 5 feet wide off the Eastern side of Lot 11, in Block 8, as shown and designated

       in Corrected Map of Ensley Highlands Company, which map is recorded in Map Book 9, Page 20, of map records in the Probate Office of Jefferson County, Alabama, said Lot 12 and 5 feet of the Eastern side of Lot 11, together forming a rectangle fronting 55 feet on the Northern side of 26th Place, now known as 26th Street and extending back Northward of uniform width 140 feet to an alley.

       A true and correct copy of the June 2, 2005 deed is attached hereto as Exhibit "1".

2. On December 31, 2007, Poe purportedly deeded her undivided one-half interest in the Property to King. A true and correct copy of the December 31, 2007 deed, as recorded in the Jefferson County Probate Court on January 9, 2008, is attached hereto as Exhibit "2".

3. On January 9, 2008, Poe purportedly executed a second deed which again conveyed to King her one-half interest in the Property. A handwritten note at the top of this second deed states that it was "[r]e-recorded to correct notary acknowledgement and legal." A true and correct copy of this "corrective" deed, as recorded in the Jefferson County Probate Court on January 10, 2008, is attached as Exhibit "3". Exhibits "2" and "3" are collectively referred to as the "Forged Deeds."

4. On January 18, 2008, King, as the purported sole owner of the Property, executed a promissory note (the "Note") and mortgage (the "Mortgage") in favor of Financial Freedom Senior Funding Corporation, a subsidiary of IndyMac Bank, F.S.B. ("FFSFC") to secure a reverse mortgage loan on the Property in the principal amount of $262,500.00. See Exhibit

3

        "4", Affidavit of Dion Kala ("Affidavit") at ¶ 5 and Exhibits "A" and "B" thereto.

5. On January 18, 2008, King also executed a second mortgage on the Property in favor of the Secretary of Housing and Urban Development (the "HUD Mortgage"). *See id.* at ¶ 6 and Exhibit "C" thereto.

6. Pursuant to the terms of the Note and the Mortgage, FFSFC disbursed $102,526.75 to King (or on his behalf) on or about January 18, 2008, at the closing. *See id.* at ¶ 7, and Exhibit "D" thereto.

7. On or about March 19, 2009, OneWest Bank, FSB acquired the rights to the Mortgage as part of a transaction by which OneWest acquired certain assets and banking operations of IndyMac Federal Bank, FSB from the Federal Deposit Insurance Corporation. *See id.* at ¶ 8.

8. In February 2014, the Office of the Comptroller of the Currency ("OCC") approved the conversion of OneWest Bank, FSB to a national bank known as OneWest Bank N.A. See id. at ¶ 9. OneWest Bank, FSB and OneWest Bank N.A. are referred to collectively hereinafter as "OneWest."

**B.     The State Court Lawsuit:**

9. On June 25, 2009, Poe filed a lawsuit against King in the Circuit Court of Jefferson County, Alabama, CV-09-902034 (the "State Court Lawsuit"), claiming that King had forged her name to the aforementioned Forged Deeds that purported to convey her interest in the Property to King. A true and correct copy of Poe's Complaint against King in the State Court Lawsuit is attached hereto as Exhibit

4

"5".

10. Neither FFSFC nor OneWest were ever named as parties to the State Court Lawsuit. *See* Affidavit at ¶ 14; see also Exhibit "6", Alacourt Case Summary Docket in the State Court Lawsuit.

11. On January 19, 2012, the State Court entered an order finding that King had indeed forged Poe's name on the Forged Deeds. This Order provided, among other things, that the Forged Deeds were "void" and that Poe's "interest, right and title as a joint tenant with the right of survivorship to the property located at 2004 26th Street, Ensley, Alabama is hereby restored." A true and correct copy of the State Court's January 19, 2012, Order is attached hereto as Exhibit "7".

12. Poe passed away on May 2, 2012. A true and correct copy of Poe's death certificate it attached hereto as Exhibit "8".

13. On September 18, 2012, the State Court entered an order declaring, among other things, that the Mortgage and the HUD Mortgage were "absolutely void" simply because the Forged Deeds were declared void. A true and correct copy of the State Court's September 18, 2012 Order is attached hereto as Exhibit "9".

14. On February 11, 2013, King signed a quitclaim deed conveying his interest in the Property to the Estate. A true and correct copy of the February 11, 2013 deed from King to the Estate, as recorded in the Jefferson County Probate Court on February 15, 2013, is attached hereto as Exhibit "10".

### C.  The Foreclosure Sale:

15. OneWest held a foreclosure sale on the Property on February 14, 2014. *See* Affidavit at ¶ 11. Federal National Mortgage Association ("Fannie Mae") purchased the Property at the foreclosure sale for $115,000. *See id.* at ¶ 12 and Exhibit "E" thereto. On December 4, 2014, Fannie Mae deeded the Property to OneWest. See id. at ¶ 10, and Exhibit "F" thereto.

16. Effective August 3, 2015, OneWest merged with and into CIT Bank, N.A. See id. at ¶ 10.

### D.  Occupancy of the Property

17. Defendant Lavert Andrews entered upon the Property approximately three years ago and he continues to occupy and remain on the Property. *See* Doc. 30, Defendant's Response Brief, at p. 7 ("Currently the property is being occupied by the sole heir at law."); *see also* Exhibit "12", Affidavit of M. Golston.

The Defendants alleged the following facts, which CIT ignored in its reply brief. Accordingly, Defendants' facts are also deemed admitted as follows:

1. On June 2, 2005, Carol Poe ("Poe") and Joseph King, III ("King") purchased real property located at 2004 26th St., Birmingham, Alabama (the "Property) as joint tenants with right of survivorship; and

2. That the deed to the Property was signed on June 2, 2005 and recorded June[1] in the probate court of

---

[1] So in original. Defendants likely intended to say "it," rather than "June."

6

        Jefferson County on June 20, 2015;[2] and (Attached as Defendant's Exhibit A: Original Deed.)

3. That on December 31, 2007 King, by fraud, deceit and misrepresentation of facts, forged the name of Poe to the said deed and caused the same to be recorded in the Probate Court of Jefferson County on January 9, 2008; and (Attached as Defendant's Exhibit B: 1st Fraudulent Deed.)

4. That on January 9, 20[08][3] King, by fraud, deceit and misrepresentation of facts, forged the name of Poe to a second deed and caused the same to be recorded in the Probate Court of Jefferson County on January 10, 2008; and (Attached as Defendant's Exhibit C: 2nd Fraudulent Deed.)

5. That on January 18, 2008, King, fraudulently purporting to be the sole owner of the Property, executed a promissory note ("Note") and mortgage (the "Mortgage") in favor of Financial Freedom Senior Funding Corporation, a subsidiary of Indy Mac Bank, FSB ("FFSFC") to secure a reverse mortgage loan on the Property; and (Attached as Defendant's Exhibit D: Reverse Mortgage)

6. That on January 18, 2008, King, by fraud and deceit, executed a second mortgage, January 25, 2008, on the Property in favor of Secretary of Housing and Urban Development (the "HUD Mortgage"); and

---

[2] So in original, but the court supposes the date should read "June 20, 2005." Either way, the deed does not appear to indicate on what date it was filed—contrary to Defendants' suggestion.

[3] The original says "January 9, 2015" as the date on which King forged Poe's name to the second fraudulent deed. An examination of Defendants' Exhibit C reveals the true date to be January 9, 2008.

7

(Attached as Defendant's Exhibit E:2nd Mortgage)

7. That on June 25, 2009, Poe filed a state court action in the Circuit Court of Jefferson County ("CV-09-902034"); and (Attached as Defendant's Exhibit F: State Court Action Complaint)

8. That on September 24, 2009, FFSFC assigned the mortgage to Mortgage Electronic Registration Systems, Inc. "MERS" and the said assignment was recorded in the probate court of Jefferson County on October 2, 2009; and (Attached as Defendant's Exhibit G: Assignment of Mortgage to MERS)

9. That on January 12, 2010, Poe, through, counsel, provided notice to FFSFC of the pending litigation in State Court; and (Attached as Defendant's Exhibit H: Notice of Litigation)

10. That on September 7, 2010, King filed for Chapter 7 bankruptcy protection (BK-10-5371-TBB) that was dismissed without a discharge on September 22, 2009; and

11. That on March 31, 2011, King filed a second petition for Chapter 7 bankruptcy protection (BK-11-1767-TBB); and (Attached as Defendant's Exhibit I: Notice of BK Filing)

12. That King listed FFSFC as a debt owed in the bankruptcy filing; and (Attached as Defendant's Exhibit J: List of Creditors)

13. That King listed the pending State Court action in his Statement of Financial Affairs in the Bankruptcy filing which the Clerk of Bankruptcy Court purports to have provided notice to the FFSFC; and (Attached

as Defendant's Exhibit K: Statement of Financial Affairs)

14. That on June 24, 2011, Poe filed an Adversarial Proceeding against King in BK-11-1767-TBB objecting to a discharge on the grounds of fraud; and

15. That on October 3, 2011, Poe, through, counsel, provided notice to FFSFC of the pending litigation in State Court; and (Attached as Defendant's Exhibit L: October 3, 2011 Notice to FFSFC)

16. That on June 9, 2012, Poe, through counsel, provided notice to FFSFC to counsel representing FFSFC; and (Attached as Defendant's Exhibit M: June 9, 2012 Notice)

17. That on January 19, 2012, The State Court found that the deeds executed by King were forged by King and that the deeds were "void". Further the State Court ordered Poe's interest in the Property restored; and (Attached as Defendant's Exhibit N: Circuit Court Judge Tom King Order 1.19.12)

18. That on May 2, 2012, Poe became deceased; and

19. That on September 12, 2012, Poe, through counsel, notified counsel for FFSFC, of a proposed order that was to be submitted to the court; and (Attached as Defendant's Exhibit O: Notice to FFSFC)

20. That on September 18, 2012, the State Court entered an order voiding the fraudulent deeds and the FFSFC mortgage forged by King; and (Attached as Defendant's Exhibit P: Circuit Court Judge Tom King Order 9-18-12)

21. That since Defendant King was ejected from the property at issue, Defendant Lavert Andrews has been in the exclusive use and possession of the property at issue; and (Attached as Defendant's Exhibit Q: Affidavit of Andrews)

22. That on February 11, 2013, King conveyed, via deed, his interest to the Defendant Estate of Carol J. Poe "Estate"; and (Attached as Defendant's Exhibit Q1: Quit Claim and Affidavit of Andrews)

23. That on December 4, 2013, MERS assigned the mortgage to One West Bank; and (Attached as Defendant's Exhibit R: Mortgage Assignment)

24. That on December 16, 2013 One West Bank recorded the mortgage assignment from MERS; and

25. That on February 14, 2014, One West Bank foreclosed on the Property; and (Attached as Defendant's Exhibit S: Reverse Foreclosure Deed)

26. That on February 24, 2014, One West Bank, through its counsel (Sirote & Permutt) recorded the foreclosure deed in the probate court of Jefferson County; and

27. That on January 20, 2015, Plaintiff filed the complaint against the named defendants that remains pending before this court.

## II

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted).[4] The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324.

### III-A

The nub of this motion for summary judgment is CIT's request for a declaratory judgment that it is the sole owner of the Property and ejecting Lavert Andrews from it. Because CIT's right to the property depends upon the validity of King's mortgage, and because a state court judgment (the "September 2012

---

[4] Congress amended Rule 56 in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Fed. R. Civ. P. 56, Advisory Committee Notes, 2007 Amendments (emphasis added). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version. *E.g.*, *Wooten v. Walley*, No. 2:07-CV-701-WKW[WO], 2008 WL 4217262, at *2 n.5 (M.D. Ala. Sep. 12, 2008).

Judgment") purported to void the mortgage, the credit this court owes to the September 2012 Judgment is critical to the resolution of this case.

The general rule is that state court judgments "have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Thus, the respect accorded a judgment is determined by the law of the rendering state—in this case, Alabama. Alabama courts do not recognize as binding against a person judgments "in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Austin v. Alabama Check Cashers Ass'n*, 936 So. 2d 1014, 1040 (Ala. 2005). Accordingly, this court is not bound to respect the September 2012 Judgment,[5] so the court need not consider CIT's suggestion that the judgment is wrong as a matter of Alabama law.[6]

Although it is not entirely clear at which aspect(s) of CIT's motion for partial

---

[5] CIT styles this issue as one of the violation of One West's due process rights, although the court is of the opinion that the due process exception (*see, e.g.*, *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 482 (1982) ("[A] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.")) to the full faith and credit statute is only at issue when the law of the relevant state would give full faith and credit to a constitutionally infirm judgment. That is not the case here.

[6] Nor could this court, if it were required to honor the September 2012 Judgment. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233–34 (1998) (citing *Fautleroy v. Lum*, 210 U.S. 230, 237 (1908) (judgment is entitled to full faith and credit even if judgment rested on a misapprehension of the governing law).

12

summary judgment they are directed, Defendants raise a handful of defenses. To the extent they argue that One West's failure to intervene in the state court lawsuit is sufficient to bind CIT to that action's result—the voiding of the mortgage—the court rejects that argument. The general Anglo-American rule is "that [t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger," *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 800 n. 5 (1996) (citation omitted) (alteration in original), and Defendants have offered no authority suggesting that Alabama employs a different rule. The September 2012 Judgment has no power in this action.

### III-B

It is undisputed that Poe and King were joint tenants with a right of survivorship prior to King's forging of the false deeds. The conveyance of one of the two half-interests in a joint tenancy with right of survivorship creates a new tenancy-in-common. *Nunn v. Keith*, 268 So.2d 792, 797 (Ala. 1972). A mortgage conveys legal title from the mortgagor to the mortgagee. *Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala. 1979). Thus, in Alabama, a mortgage executed by one joint tenant severs a joint tenancy with right of survivorship into a tenancy-in-common. *See Stewart v. AmSouth Mortg. Co.*, 679 So.2d 247, 248–49 (Ala. Civ. App. 1995), *rev'd on other grounds sub nom. Ex Parte AmSouth Mortg. Co.*, 679 So.2d 251 (Ala. 1996). That is,

one of the two joint tenants may mortgage his or her half (and so destroy the joint tenancy) unilaterally. *Cf. Fadalla v. Fadalla*, 929 So.2d 429, 434 (Ala. 2005) (stating the unilateral destruction rule while contrasting joint tenancies with concurrent life estates with cross contingent remainders in fee).

CIT argues that, when King mortgaged the Property, that act severed the joint tenancy, and the mortgage lawfully attached to King's half-interest. In their "Fraud" and "Illegal Contract" defenses, the Defendants appear to argue that the mortgage was infirm. Their argument is, however, unhelpfully terse on this point: "The facts and law, as found and adhered to by the State Court, are clear and satisfactory for the State Court to set aside the deeds and the mortgages." (Doc. 34 at 6). Nevertheless, CIT's severance argument is obviously designed and deployed to inoculate its claim against Defendants' (conclusory) attack on the mortgage itself, *see* doc. 36 at 3, so the court feels compelled to examine these under-developed defenses in greater detail.

In one of the demand letters in the record, Defendants' former counsel argued that "a forged deed is void, and completely ineffectual to pass title." (Doc. 34-12 at 3) (emphasis added). The letter did not cite Alabama authority for the proposition, but that is a verbatim statement of the law. *See Sheffield v. Andrews*, 679 So.2d 1052, 1054 (Ala. 1996) (quoting *Cumberland Capital Corp. v. Robinette*, 331 So.2d 709, 713 (Ala. Civ. App. 1976)). More importantly, "[a] subsequent innocent purchaser

is not protected against such void instruments." *Cumberland Capital*, 331 So.2d at 714. So a more precise formulation of Defendants' fraud and illegal contract defenses would be that because the King mortgage was predicated on fraudulent deeds, the original mortgagee was the prototypical innocent purchaser that would <u>not</u> be protected against the void instrument, and, therefore, the mortgage <u>itself</u> was void.

*Cumberland Capital* supports this argument. There, the mortgagor forged deeds transferring property to himself. He then mortgaged the property to the mortgagee. The trial court voided the deed as well the mortgage, and the Court of Civil Appeals affirmed. *Id.* at 715. Had CIT's predecessor in interest been made a party to the state court action here, the state court's application of the rule in *Cumberland Capital* in the September 2012 Judgment would likely have been appropriate.[7] But OneWest was <u>not</u> made a party.  This court must rule on the facts of this case, not those of *Cumberland Capital*.

CIT's rejoinder to the *Cumberland Capital* argument is that, because King <u>could</u> have mortgaged his half-interest, the mortgage was not void, and it did in fact attach, albeit to his half-interest only. They cite no authority to support the proposition that a half-void mortgage is preserved by its non-void half—aside from

---

[7] This is not to suggest that this court exercises appellate authority over the Circuit Court of Jefferson County. *See Lance v. Dennis*, 546 U.S. 459, 463 (2006) ("[L]ower federal courts are precluded from exercising appellate jurisdiction over final state court judgments.").

the standard language about the right of joint tenants to alienate their property. But it does not matter. The after-acquired title doctrine, which was a "settled" rule as early as 1878, *see Chapman v. Abrahams*, 61 Ala. 108, 114 (1878), moots this issue.

In the January 2012 Judgment, the state court reinstated Poe's interest in a joint tenancy with right of survivorship. (*See* doc. 33-7). Since a joint tenancy with right of survivorship requires unity of "title, interest, and possession," *Nunn*, 268 So.2d at 794 & 797,[8] King's interest in that joint tenancy with right of survivorship was necessarily also resurrected. Whether this was right or wrong as a matter of Alabama law is irrelevant; this court takes the January 2012 Judgment as it is presented. *See Fauntleroy*, 210 U.S. at 237. Poe's death thereafter vested "the entire estate in the survivor." *Kempaner v. Thompson*, 394 So.2d at 921. That would be King.

Alabama has, "perhaps," "more rigidly adhered to" the after-acquired title rule than any other state. *Turner v. Lassiter*, 484 So.2d 378, 380 (Ala. 1985) (quoting *Doolittle v. Robertson*, 19 So. 851 (Ala. 1895)). This rule provides that where "one having no title to convey lands by express warranty or by the warranty which the law implies from the use of the words 'grant, bargain, sell, and convey,' and thereafter acquires title, 'such title will inure and pass *eo instanti* to his vendee.'" *Porter v.*

---

[8] *Kempaner v. Thompson*, 394 So.2d 918, 921 (Ala. 1981) describes *Nunn* as holding that the four unities are no longer required to be present, but *Nunn* explicitly indicates that three unities are required—not that all are abandoned. *See Nunn*, 268 So.2d at 524.

16

*Henderson*, 82 So. 668, 672 (Ala. 1919) (alteration added to include italics). At the time he signed the mortgage, King "warrant[ed] . . . the title to the Property." (Doc. 33-4 at 13). King was therefore subject to the after-acquired title rule, so title to the Property vested immediately in OneWest upon Poe's death (which caused 100% ownership to vest in King, the mortgagor). The forged deeds' incapacity to convey title is therefore irrelevant.

Although King purported to convey his interest in the Property to Poe's estate in 2013, the mortgage, filed in 2008, took priority over King's 2013 quitclaim deed to Poe's estate. *See Bailey Mortg. Co. v. Gobble-Fite Lumber Co., Inc.*, 565 So.2d 138, 143 (Ala. 1990). OneWest foreclosed on February 14, 2014, and sold the property to Fannie Mae. That sale extinguished all subordinate interests, including the estate's claim, *see id.*, and vested legal title in Fannie Mae. ALA. CODE. § 35-10-5. After the sale, Fannie Mae deeded the property back to OneWest, which later merged into CIT. CIT is entitled to a declaratory judgment that it is the sole owner of the Property. *See Palmer v. Resolution Trust Corp.*, 613 So.2d 373, 375 (Ala. 1993) (the "holder of the foreclosure deed has full legal title, subject only to the right of redemption.").

### III-C

In Alabama, "[e]jectment is a favored action for the trial of title to land." *Kelley*

*v. Mashburn*, 236 So.2d 326, 327 (1970). "An ejectment plaintiff" must prove that "the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same." *Ware v. Deutsche Bank Nat. Trust Co.*, 75 So. 3d 1163, 1172 (Ala. 2011) (citation and internal quotation marks omitted). In short, "if the plaintiff shows a superior legal title . . . he must recover." *Lee v. Jefferson*, 435 So.2d 1240, 1242 (Ala. 1983). The court has concluded that CIT has legal title to the entire Property. It is undisputed that Lavert Andrews has entered the Property and detains it. His detainer is rendered unlawful by his lack of title. Accordingly, he must be ejected from the property.

### III-D

Defendants have a few more defenses that can be quickly dispatched. First up is "B. Laches." Laches does not apply to legal claims subject to a statute of limitations. *Elliott v. Navistar, Inc.*, 65 So.3d 379, 387 (Ala. 2010). Ejectment is subject to the ten year statute of limitations provided by ALA. CODE § 6-2-33. *See Goodson v. Morrow*, 547 So.2d 856, 858 (Ala. 1989). It is a legal claim. *Karrh v. Willis*, 544 So.2d 921, 922 (Ala. 1989). As for the declaratory judgment action, "[l]imitations statutes do not apply to declaratory judgments as such," *Luckenback S.S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963), but it would be absurd to

apply laches to a declaratory judgment seeking ejectment to test title when the underlying ejectment action is not subject to laches.

"C. Faulty Assignment or Wrongful Foreclosure" is premised entirely upon the binding effect of the January 2012 Judgment on OneWest/CIT and this court. As explained above, the January 2012 Judgment has no effect on OneWest/CIT.

"E. Mortgage Fraud" appears to be a non-sequitur, alleging that an attorney who assisted in preparing these reverse mortgages was later convicted of wire fraud. Whatever Defendants believe to be the significance of this fact, their argument is too opaque (and the supporting evidence too illegible) to affect CIT's title. "A party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999).

## IV

By separate order, the motion for partial summary judgment will be **GRANTED**.[9] It will be **ADJUDGED** that CIT is the sole owner of the Property. It further will be **ORDERED** that Lavert Davis be **EJECTED** from the property.

---

[9] Plaintiff has voluntarily dismissed its other claims against the Estate of Poe and Pamela Bass. (*See* doc. 33 at 19 n. 7).

**DONE** and **ORDERED** this 23d day of June, 2016.

*/s/ VEHopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge